Filed 8/7/25  P. v. Smith CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B339012 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. |
| v. | No. XSCTA139840) |
| ROBERT LATRELL SMITH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Connie R. Quinones, Judge. Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Robert Latrell Smith (defendant) appeals the order of the superior court summarily denying his petition for resentencing under Penal Code section 1172.6 at the prima facie stage without ordering an evidentiary hearing (*id.,* subd. (c)).[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and Dwayne Moore were members of a criminal street gang affiliated with the Bloods. On April 12, 2016, Moore was shot while in the Nickerson Gardens housing project in Los Angeles.

Shortly after 9:00 a.m. the following day, there was a shooting near the intersection of Anzac Avenue and Century Boulevard in Los Angeles. The location is less than a seven-minute drive from Nickerson Gardens and is within territory claimed by another criminal street gang, a known enemy of defendant's gang.

While no one was seriously injured in the April 13, 2016 shooting, at least three vehicles—two of which were occupied— were damaged by gunfire. The driver of one of the occupied vehicles, David M., was injured by shattered glass. Also at the scene was a gang member and apparent target of the attack, O.J.S., and Sylvia B., a bystander.

Based on these events, defendant and his codefendant Kenneth Beaver were each charged with committing attempted

---

[1] Undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the statute only by its current number for clarity and convenience.

premeditated murder (§§ 187, subd. (a), 664, subd. (a)) and shooting at two occupied motor vehicles (§ 246). The amended felony complaint further alleged defendant's and Beaver's crimes were gang-related (§ 186.22, subd. (b)(1)(C) & (4)) and that a principal personally and intentionally used and discharged a firearm (§ 12022.53, subds. (b), (c), (e)(1)). Defendant was additionally charged with being a felon in possession of a firearm (§ 29800, subd. (a)(1)) and alleged to have suffered a prior strike (§§ 667, subd. (d), 1170.12, subd. (b)).

Preliminary hearing testimony from law enforcement officers was as follows: At approximately 9:02 a.m. on April 13, 2016, a surveillance camera in the area of Nickerson Gardens recorded two men getting into a white Camaro with paper dealer plates. One wore a red sweater and got into the driver's seat. The other, wearing a black top and black pants, got into the passenger's seat. The Camaro drove off.

Thereafter, a white Camaro with paper plates was on Anzac Avenue between 102nd Street and Century Boulevard. The car drove off and it was seen again at Century Boulevard. Surveillance cameras in the area recorded the Camaro circling the block. Shooting from the car's location was heard.

Sylvia B., who was walking in the area, described to police the shooter was a Black male with short dreadlocks, wearing a white shirt with dark pants. She saw him get out of the passenger side of the Camaro. She was close enough to notice an Oreo cookie fall from his lap when he did. After the shooting, he got back in the passenger seat and the car drove off.

David M. described the shooter to police as a Black male wearing a white shirt and dark pants. David M. also spoke to a detective who recalled David M. describing the shooter as a Black

male with short dreadlocks wearing a gray hoodie. Though the officer recalled David M. not knowing which side of the Camaro the shooter used ("all [David M.] saw was flashes and he was just trying to get out of there"), the detective "th[ought]" David M. said the shooter used the driver's door.

The detective also showed David M. a photographic lineup containing defendant's photograph. After going back and forth between two photos, David M. chose defendant's photo as most resembling the shooter.

About 9:18 a.m., 16 minutes after the Camaro was recorded leaving the area, a surveillance camera recorded it returning to Nickerson Gardens. A few minutes after that, a patrol officer encountered defendant and Beaver walking in the area and made contact with them. The officer noted that defendant was wearing a black shirt and black pants and Beaver was wearing a red shirt and black pants. They were allowed to leave.

When police saw the Camaro again, they initiated a traffic stop. Beaver was in the driver's seat, and another man named Williams was in the passenger seat. Beaver was arrested, booked, and photographed. Beaver admitted driving the Camaro earlier that morning with defendant as the passenger.

Beaver and defendant each pled no contest to attempted murder after the trial court struck the allegation that it was willful, deliberate, and premeditated. Defendant further admitted the gang enhancement and prior strike. The trial court sentenced him to 16 years in prison.

In May 2023, defendant filed, pro se, a petition for resentencing pursuant to section 1172.6. The trial court appointed counsel.

The People failed to file a written opposition to defendant's petition. Defense counsel filed a brief contending this was a concession of merit such that defendant was entitled to an evidentiary hearing. He also contended the checkbox petition entitled defendant to an evidentiary hearing. Counsel did not argue the facts of defendant's case in his brief.

The trial court held a hearing on whether a prima facie showing had been made. The trial court admonished the People for their failure to file a brief, but did not deem their failure a concession. The People argued "the entire record shows that [defendant is] the shooter." Defense counsel responded the court was prohibited from engaging in any factual determinations without first holding an evidentiary hearing, and defendant's checkbox petition was sufficient to satisfy his prima facie burden. He added, "the court cannot make [a] factual determination just on a prelim," even if counsel stipulated to it as the basis for the defendant's plea. But he did not argue the facts of defendant's case nor alert the prosecution or the court to what issues an evidentiary hearing would entail.

Based on its own review of the preliminary hearing transcript, the court concluded the theory on which the prosecution proceeded was that defendant was the actual shooter and therefore ineligible for section 1172.6 resentencing as a matter of law.

Defendant timely appealed.

Defendant's opening brief raised the issues trial counsel pressed below: whether the trial court was obligated to hold an evidentiary hearing based solely on defendant's checkbox petition; and whether, as a general matter, the trial court could consider the preliminary hearing transcript in determining

5

whether to hold an evidentiary hearing, even given trial counsel's stipulation to the transcript as a basis for the plea. Counsel also argued defendant never admitted being the actual perpetrator. He argued the trial court improperly relied on section 872, subdivision (b) testimony at the prima facie hearing, because it would be inadmissible at an evidentiary hearing under section 1172.6, subdivision (d)(3). And, he argued the facts disclosed by the preliminary hearing transcript would have supported a theory of attempted murder other than that defendant was the actual shooter such as accomplice liability in order to address the possibility that the jury might be left with a reasonable doubt as to the identity of the actual shooter.

After defendant filed his opening brief, our Supreme Court issued its decision in *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*). This foreclosed trial counsel's arguments below and the primary arguments now raised on appeal. Specifically, *Patton* authorizes trial courts to consider a petitioner's record of conviction to determine whether the petitioner has made a prima facie case of eligibility for section 1172.6 resentencing, *including* the preliminary hearing transcript. (*Patton*, at p. 568.) *Patton* further holds that "petitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail." (*Id.* at p. 567.)

On reply, appellate counsel acknowledged *Patton* and requested, should we be inclined to affirm, that defendant have the opportunity to submit an amended petition. The court in *Patton* afforded the same opportunity to the defendant in that case. (*Patton, supra*, 17 Cal.5th at p. 570.)

6

## DISCUSSION

**I.   Applicable law and standard of review**

As relevant here, section 1172.6 provides an avenue for persons convicted of attempted murder under the natural and probable consequences doctrine to be resentenced to the target offense underlying their conviction. (See § 1172.6, subds. (a), (e).)

"[T]he path to resentencing under section 1172.6 involves three stages. It begins with a facially valid petition that entitles petitioner to counsel, continues with asking whether petitioner has made a prima facie case for relief, and, if so, proceeds to an evidentiary hearing on the ultimate question of whether petitioner should be resentenced." (*Patton*, *supra*, 17 Cal.5th at p. 562.)

Because defendant's petition was denied after he was appointed counsel but without an evidentiary hearing, we are concerned here only with the second, or prima facie, stage.

A trial court may deny a petition at the prima facie stage """"if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition.""""" (*Patton, supra*, 17 Cal.5th at p. 563.) The record of conviction a court may consider includes a preliminary hearing transcript preceding a guilty plea.[2] (*Patton*, at p. 568.) "[P]etitioners confronting a record

---

[2]     A trial court's ability to rely on the preliminary hearing transcript at the prima facie stage is not limited or qualified by the Supreme Court or by the Legislature. Although the Legislature bars from the third, or evidentiary hearing, stage, hearsay testimony that is admissible only under section 872, subdivision (b) (§ 1172.6, subd. (d)(3)), the *Patton* court expressly

7

of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail." (*Id.* at p. 567.) "[S]hould a trial court encounter a material fact dispute, the court may not resolve that dispute at the prima facie stage and should instead grant petitioner an evidentiary hearing, assuming relief is not otherwise foreclosed." (*Ibid.*) "A dispute regarding the basis of a conviction might arise if, for instance, a petitioner points to specific facts that identify someone else as the direct perpetrator. [T]his may come from the record itself. But absent specific facts, no such dispute arises . . . from mere latent speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion." (*Ibid.*)

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

**II.  Analysis**

Our review on appeal is limited to the record below. Defense counsel relied on a theory, now invalidated, that defendant's bare petition entitled him to an evidentiary hearing. No alternative theory of prima facie sufficiency was included. The People filed no response to the petition.

**A.    *Section 872, subdivision (b) evidence***

Defendant contends, and the People agree, a trial court may not rely on evidence admitted at a preliminary hearing under section 872, subdivision (b) in performing its prima facie

---

left open whether such evidence could be considered at the prima facie stage. (*Patton, supra*, 17 Cal.5th at p. 557, fn. 2.)

section 1172.6 inquiry. In support of this conclusion, defendant cites *People v. Flores* (2022) 76 Cal.App.5th 974, 988 and footnote 9, disapproved on another ground in *Patton, supra*, 17 Cal.5th at page 569. The People also observe that the Court of Appeal decision reviewed in *Patton* avoided using section 872, subdivision (b) evidence in denying a petition at the prima facie stage. (*People v. Patton* (Feb. 22, 2023, B320352) [at fn. 2], review granted June 28, 2023, S279670, see sub. opn. 17 Cal.5th 549.)

We need not reach this issue because it was not raised below. (See *People v. Ingram* (2024) 104 Cal.App.5th 1242, 1264.) While a court can choose to consider such an issue for the first time on appeal, it may not do so when the issue involves the admission or exclusion of evidence. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) We reject defendant's argument he had no occasion to raise an objection to consideration of specific evidence because there was no evidentiary hearing. If it was error for the trial court to consider section 872, subdivision (b) testimony at the section 1172.6, subdivision (c) prima facie hearing, the time to assert the objection was at that hearing.[3]

---

[3]  Even if defendant had not forfeited the issue by failing to raise it below, we would find no error in the trial court's reliance on section 872, subdivision (b) testimony in determining defendant failed to make a prima facie showing of entitlement to resentencing. As *Patton* makes clear, the prima facie stage is distinct from the evidentiary hearing stage. (See *Patton, supra*, 17 Cal.5th at p. 562.) Its purpose is to frame the issues, not resolve an evidentiary dispute. (*Id.* at p. 569.) Whereas the Legislature expressly excluded section 872, subdivision (b) testimony from consideration at the latter, it made no such provision for the former. This omission bears particular weight in the context of relevant judicial interpretation of section 1172.6

9

**B. *Defendant failed to meet his burden at the prima facie stage***

Defendant is not entitled to relief as a matter of law if the record of conviction shows he was the actual shooter. (*People v. Patton, supra*, 17 Cal.5th 549.) For the reasons that follow, the record of conviction so shows. Because defendant failed to controvert this showing with specific facts, we affirm.

First, the record shows Beaver and defendant were in the Camaro at the scene of the shooting. Beaver admitted to driving with defendant as his passenger and the attire of the men seen on surveillance video entering the Camaro matched the attire Beaver and defendant were wearing when encountered by a patrol officer shortly after the shooting. Beaver and defendant were away from Nickerson Gardens for just 16 minutes, and the driving time from Nickerson Gardens to the crime scene and back was between 12 and 14 minutes, leaving just two to four minutes to park near the scene, circle the block, park again, get out of the car, fire off between 13 and 15 rounds, and get back in the car.

The record further shows that, of Beaver and defendant, only defendant had dreadlocks at the time of the shooting.

Finally, the record shows the shooter had dreadlocks. Both eyewitnesses who observed the shooter described him as having dreadlocks. One witness identified defendant as the shooter from a photo lineup. While defendant argues this identification was "weak[]," we are not concerned with the strength of the evidence at this juncture. We are concerned only with whether it is controverted by the petitioner's nonconclusory factual allegations.

---

(see, e.g., *People v. Lewis* (2021) 11 Cal.5th 952) and its subsequent amendments (see, e.g., Stats. 2021, ch. 551, §§ 1, subd. (d), 2).

(See *Patton, supra*, 17 Cal.5th at p. 567 & fn. 10.) Defendant offered none.

On this record, defendant failed to carry his burden of proof for a prima facie case for the reasons set forth above.

## DISPOSITION

The judgment is affirmed.


CHAVEZ, J.


I concur:


LUI, P. J.

*People v. Smith*
**B339012**
**RICHARDSON, J., Concurring.**

I concur in the judgment of affirmance only. I write separately to address defendant's request, made in his reply brief and at oral argument before this court, that we expressly authorize him to file an amended petition should we affirm the judgment.

Defendant's request is based on our Supreme Court's decision in *People v. Patton* (2025) 17 Cal.5th 549, issued after defendant filed his opening brief on appeal. *Patton* foreclosed the primary arguments defendant made here and below that his bare checkbox petition entitled him to an evidentiary hearing. The *Patton* court rejected Court of Appeal authority on which defendant relied, affirming the lower courts' determinations that Patton was not entitled to an evidentiary hearing based on his checkbox petition where the record of conviction refuted his rote allegations of eligibility for resentencing. (*Id.* at p. 564.) Nevertheless, the court expressly authorized Patton to file an amended petition "out of an abundance of caution" to give him an opportunity to allege specific facts that might warrant an evidentiary hearing. (*Id.* at pp. 569–570.) While I do not believe it is necessarily required in every case, I believe that the presence of an accomplice at the scene of the shooting justifies the same express authorization in this case. (*Id.* at p. 567.)

RICHARDSON, J.

1